COMMONWEALTH *vs.* RAUL VARGAS.[1]

Suffolk. March 10, 1994. - May 12, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Controlled Substances. Evidence*, Other offense, Relevancy and material-
ity. *Entrapment. Practice, Criminal*, Instructions to jury.

This court held that evidence of a defendant's prior possession of a con-
trolled substance is admissible, in response to the defendant's claim of
entrapment on a subsequent trafficking charge, to show the defendant's
predisposition to distribute controlled substances only if the prior crime
was committed with the intent to distribute. [795-797]

A new trial was required on two indictments for trafficking in cocaine,
where at the first trial the defendant raised the defense of entrapment
and admitted on cross-examination that he had been previously arrested
in possession of sixteen grams of cocaine, and where the judge's instruc-
tions did not inform the jury that to consider the defendant's admitted
past possession of cocaine as evidence of his predisposition to traffic, the
jury must first find that in previously possessing the drug the defendant
intended to distribute it. [797-798]

INDICTMENTS found and returned in the Superior Court
Department on June 20, 1991.

The case was tried before *Julian T. Houston*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Woodrow Brown, Jr.*, for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Com-
monwealth.

NOLAN, J. The defendant appeals from his convictions on
two indictments charging trafficking in cocaine. He asserts
that the trial judge erred in permitting the Commonwealth to
proffer evidence of a past crime to show predisposition in re-

[1]The defendant is also known as Jose Raul Vargas.

sponse to the defendant's assertion that he was entrapped. We transferred this case on our own motion. We reverse on the ground that the judge's jury instructions concerning the evidence of the defendant's past crime were not sufficient to protect against improper consideration of the evidence. We present the facts.

In April, 1991, State Trooper Edward H. Troy began an investigation of the defendant, Raul Vargas. On April 13, at a Boston-area nightclub, Trooper Troy was introduced to the defendant by a Suffolk County narcotics task force informant. The defendant testified that he had consumed numerous alcoholic beverages that evening, some of which were purchased by the informant. He further testified that the informant asked him if he had any cocaine, presumably for sale, and that in response, he stated that he did not and that he only purchased the drug for his own use. The informant asked the defendant for his telephone number. The defendant provided the telephone number where he worked.

There was evidence that the informant called the defendant at work the following week and asked the defendant to discuss with his source the possibility of providing Trooper Troy, who was referred to as "Eddie," quantities of cocaine. The informant called the defendant numerous times throughout the following weeks. In early May, 1991, the defendant sold to the informant, in the presence of Trooper Troy, approximately fourteen grams of cocaine.

The informant again telephoned the defendant. In response, the defendant telephoned Trooper Troy, who informed the defendant that he was interested in purchasing cocaine. Trooper Troy later telephoned the defendant, and requested one ounce of cocaine. The following day, May 29, 1991, the defendant met Trooper Troy outside a Boston restaurant. The defendant entered Troy's automobile and provided Troy with one ounce of cocaine in exchange for $1,100.

In early June, Trooper Troy telephoned the defendant, and requested one-half pound of cocaine. Troy called the defendant again concerning the request. On June 14, 1991, Troy met the defendant outside the same Boston restaurant at

which their earlier transaction took place. The defendant entered Troy's vehicle. Troy drove a short distance. The defendant produced the cocaine. On examining the substance, Trooper Troy signalled surveillance officers who had been stationed in the area. The defendant was arrested and tried on two indictments charging trafficking in cocaine, a Class B substance, under G. L. c. 94C, § 31 (1992 ed.). Trial commenced in the Superior Court on October 17, 1991. On October 21, the jury returned guilty verdicts.

The defendant appeals, claiming that the trial judge erred in allowing the Commonwealth to present evidence of a past crime. The defendant further argues error in the judge's supplemental instruction to the jury concerning the defense of entrapment.

1. *The defendant's prior crime.* At trial, the defendant proffered evidence attempting to show that he had been entrapped. In response, the Commonwealth attempted to prove that the defendant was predisposed to commit the crimes. In so doing, the prosecutor questioned the defendant on cross-examination about his arrest in 1989. The only relevant evidence elicited from the defendant concerning the arrest was that, at the time of the arrest, he was in possession of sixteen grams of cocaine, contained in three packages, and that the case arising from the arrest was still pending. The Commonwealth called State Police Lieutenant Ronald Ford to testify as a rebuttal witness and expert. Over objection, the Commonwealth entered in evidence a copy of a Department of Public Health certificate of analysis, which included the defendant's name, the quantity of cocaine with which the department had been provided, and a test result which indicated that the cocaine was 95% pure. Ford testified, over objection, that, based on the information contained in the department certificate, it was his opinion that the cocaine found on the defendant's person "would be used for distribution to others on the street."

The defendant argues that it was error to allow the jury to consider his past crime. He asserts that the prior crime was not substantially similar to the crimes for which he was on

trial. In support of this argument, the defendant alleges, and the Commonwealth concedes, that the admission of the certificate of analysis was error. The defendant further asserts that there was therefore no competent evidence tending to show that the prior crime involved an intent to distribute.

a. *Similar crimes.* We first consider whether, by itself, the defendant's admitted possession of cocaine on a previous occasion is sufficiently similar to the crimes for which he is now charged — trafficking in cocaine — such that evidence of the past crime may be used by the Commonwealth, in response to the defendant's claim of entrapment, to show that the defendant was predisposed to traffic in cocaine. If, by itself, possession is sufficient, the issues concerning the department document and Lieutenant Ford's testimony need only be discussed briefly, as the defendant admitted possession. If possession alone is not sufficiently similar to trafficking, we then must address issues concerning sufficiency of proof and instruction of the jury.

It has been long recognized that, "[w]hen evidence of inducement has been entered, the burden rests upon the Commonwealth to prove beyond a reasonable doubt the predisposition of the defendant to commit the crime." *Commonwealth* v. *Miller*, 361 Mass. 644, 652 (1972). "[T]he Commonwealth may introduce a defendant's prior criminal acts to show predisposition." *Commonwealth* v. *DeCastro*, 24 Mass. App. Ct. 937, 938 (1987), and cases cited. Those prior criminal acts, however, must be similar to the crimes for which the defendant is on trial. *Miller, supra.* Only those crimes which are similar will have probative value sufficient to outweigh the strong likelihood of prejudice to the defendant. See *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984). We consider whether a prior possession of cocaine, by itself, is sufficiently similar to the crime of trafficking in cocaine, such that it may be given to the jury as proof of a defendant's predisposition to traffic.

Jurisdictions that have considered this issue have split on either side. Compare *United States* v. *Bramble*, 641 F.2d 681, 682-683 (9th Cir. 1981), appeal after remand, 680 F.2d

590 (9th Cir.), cert. denied, 459 U.S. 1072 (1982) (error to admit evidence of defendant's prior cultivation of marihuana plants in prosecution for distribution of and possession with intent to distribute cocaine where no evidence of defendant's intent to distribute the marihuana); *State* v. *Ross*, 25 Ariz. App. 23, 25-26 (1975) (evidence that defendant in the past intended to purchase heroin does not indicate a predisposition to sell heroin); *State* v. *Stanley*, 288 N.C. 19, 33 (1975) (evidence of defendant's past possession of marihuana "would not indicate a predisposition" to distribute and possess with the intent to distribute LSD), with *State* v. *Matheson*, 363 A.2d 716, 723 (Me. 1976) (evidence of defendant's prior possession and unlawful use of drugs is probative as to his predisposition to sell drugs); *State* v. *Goldman*, 97 N.C. App. 589, 595 (1990) (evidence of the defendant's personal use of drugs, although not "synonymous with the intent to sell, distribute or traffic drugs," properly admitted to show his predisposition to distribute drugs).

We decide today that the crime of possession, by itself, is not similar to the crime of distribution for purposes of proving a predisposition to distribute. A prior crime of possession with the intent to distribute, however, is sufficiently similar to the crime of distribution, such that it may be proved to show a defendant's predisposition to distribute. We so rule because the risk of prejudice to a defendant who is shown to have merely possessed narcotics outweighs the probative value of such evidence as to his likelihood to sell narcotics; a jury may be impressed with any prior narcotic activity, while the particular prior activity may evince little as to the defendant's predisposition to sell or to distribute.[2] Conversely,

---

[2]For example, consider a defendant who, years prior to the distribution of a large quantity of marihuana for which he is being tried, was arrested for possession of a marihuana cigarette which he intended for his personal consumption. His past possession of the marihuana says little of his present likelihood to sell large quantities of the drug absent government inducement. Granted, statistically one who has possessed controlled substances may be more likely than an otherwise law-abiding citizen to distribute them. However, the inquiry must be more focussed: Does the defendant's past evidence a predisposition to commit the crime that he was induced to

evidence of a defendant's prior possession of narcotics with the intent to distribute them is far more probative as to his predisposition to distribute, and the probative worth of such evidence outweighs its risk of undue prejudice. Thus, we conclude that evidence of a defendant's prior possession of narcotics is admissible as to his predisposition to distribute narcotics only if the prior crime was committed with the intent to distribute.

In the present case, the defendant admitted a previous possession of sixteen grams of cocaine. A prosecution witness testified that, in his opinion, the defendant intended to distribute such cocaine. There is a question as to the validity of that witness's testimony. Regardless, we must reverse the judgments and remand this case for a new trial, because the jury were not instructed properly concerning the evidence of the defendant's prior crime.[3] At the new trial, the judge must instruct the jury that, to consider the defendant's admitted past possession of cocaine as evidence of his predisposition to distribute, they must first find that in previously possessing

---

commit? In the circumstances of this hypothetical, the question is: Does a defendant's having possessed a marihuana cigarette show that he is predisposed to sell large quantities of marihuana without being induced to do so? The answer is no; that one has purchased and possessed a drug does not indicate that he is predisposed to sell the drug. The state of mind as to each crime is distinct: One involves an intent to purchase and possess; the other involves an intent to sell or distribute. Thus, the probative value of evidence showing a past instance of possession as to a later charge of distribution is minimal, and the likelihood of prejudice from such evidence is high, as the jury may improperly determine that because the defendant has used drugs in the past, he is of a bad character and has a general propensity to commit a crime.

[3]The judge instructed the jury in part as follows:

"I want to give you one final instruction before I excuse you. In determining whether or not the Defendant has proved to our satisfaction that he was entrapped into committing this crime, in addition to the instructions that I have given you up to this point *you may also consider evidence of the prior conduct of the Defendant including* his criminal record, if any, and *prior offenses of a similar nature.* You may consider such evidence solely in connection with your determination of his predisposition or readiness to commit the offenses with which he is charged." (Emphasis added.)

the drug, he intended to distribute it. It cannot be too strongly stressed that the earlier charge had not been proved and was still pending at the time of trial.

b. *The certificate of analysis.* Because the Commonwealth concedes that the certificate of analysis was admitted without a proper foundation, and therefore in error, we need not determine whether the testimony of the Commonwealth's expert, which was based on the information contained in the certificate, was also allowed in error. A proper foundation for admission of the certificate at the retrial in this action should cure any alleged improprieties in the expert's testimony.

2. *Jury instructions.* The defendant also alleges that the trial judge erred in giving a supplemental instruction to the jury in response to a question concerning the requisite burden of proof on the issue of entrapment. Because we reverse the defendant's convictions and remand for a new trial, we need not address the issue.

3. *Conclusion.* The judgments are reversed, the verdicts set aside. We remand this case for a new trial in accordance with this opinion.

*So ordered.*